**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, WESTERN DIVISION**

| | |
|---|---|
| CAITLIN HOLT, as general guardian of<br>E.R., a minor, | ) <br> ) <br> ) |
| Plaintiff, | ) |
| v. | ) Case No. |
| | ) |
| ROCHELLE COMMUNITY CONSOLIDATED<br>SCHOOL DISTRICT NO. 231 BOARD OF<br>EDUCATION; DR. JASON HARPER;<br>ANTHONY DOYLE; JUSTIN ADOLPH,<br>in their individual capacities; | ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| Defendants. | ) JURY DEMANDED |

## COMPLAINT AT LAW

NOW COMES Plaintiff, CAITLIN HOLT ("Holt"), as general guardian of E.R., a minor,

by and through her undersigned attorney, Cass Thomas Casper, Esq. of DISPARTI LAW

GROUP, P.A., and for her Complaint against Defendants, ROCHELLE COMMUNITY

CONSOLIDATED SCHOOL DISTRICT NO. 231 BOARD OF EDUCATION (the "Board" or

"District"); DR. JASON HARPER ("Harper"), ANTHONY DOYLE ("Doyle"), and JUSTIN

ADOLPH ("Adolph"), in their individual capacities (collectively, the "Individual Defendants"),

states as follows:

## <u>NATURE OF THE CASE</u>

1. This action arises from the repeated sexual assault of E.R., a seven-year-old

second-grade student at Central Elementary School, by an older student, A.Z., and the subsequent

illegal retaliation against E.R. and her mother, Caitlin Holt, by Rochelle Community Consolidated

School District No. 231 ("the District") and its officials after Plaintiff reported the abuse.

2. During the 2024 and 2025 school years, A.Z., a then-13-year-old student,

subjected E.R. to a terrifying campaign of sexual harassment and assault on the school bus, which

included nonconsensual sexual touching, physical choking, and intimidation.

3.    The District and its officials had actual knowledge of A.Z.'s history of inappropriate and dangerous sexual behavior toward younger students but acted with deliberate indifference, failing to implement adequate safety measures to protect E.R. from further harm.

4.    Immediately after Holt filed a formal Title IX complaint on September 7, 2025, to protect her daughter, District officials engaged in a pattern of unlawful retaliation. This included subjecting the traumatized eight-year-old to an improper, unauthorized interrogation about the sexual assault and weaponizing the Illinois Department of Children and Family Services (DCFS) by filing a false, retaliatory report against Holt.

5.    As a direct result of the Defendants' actions and failures, E.R. has been forced to endure a hostile educational environment and has suffered severe and ongoing physical and psychological trauma, including symptoms consistent with PTSD, panic attacks, and suicidal ideation, necessitating extensive medical and therapeutic intervention.

6.    Plaintiff asserts claims against Defendants for violations of Title IX, including sexual harassment, hostile environment, and retaliation; deprivation of constitutional rights under 42 U.S.C. § 1983, including *Monell* liability and failure to intervene; and state law claims for negligence involving willful and wanton conduct and violations of the Illinois Civil Rights Act of 2003.

7.    Plaintiff seeks all available relief, including compensatory damages for E.R.'s profound physical and psychic injuries, and reasonable attorneys' fees.

## JURISDICTION AND VENUE

8.    This Court has jurisdiction over Plaintiff's claims pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. §1681(a), 42 U.S.C. § 1983 and the Fourteenth Amendment of the United States Constitution.

2

9. Supplemental jurisdiction exists over the state law claims pursuant to 28
U.S.C. § 1367 because the factual allegations and claims are so related as to form part of the same case
and controversy.

10. Venue is proper in this Court because Defendant Board has its principal place
of operation in Ogle County, Illinois, and the acts and omissions giving rise to Plaintiff's claims have
occurred in Ogle County, Illinois, within the Northern District of Illinois.

## PARTIES

11. Plaintiff, CAITLIN HOLT, is an adult resident of this judicial district. She is
the mother and next friend of E.R., the minor victim of the sexual abuse, harassment, and retaliation
outlined herein.

12. Plaintiff, E.R., is a minor child and a resident of this judicial district. At all
relevant times, E.R. was a student at Central Elementary School within the Defendant District.

13. Defendant, ROCHELLE COMMUNITY CONSOLIDATED SCHOOL
DISTRICT NO. 231 ("the District"), is an Illinois Community Unit School District that encompasses
various schools, including Central Elementary School, where the sexual harassment, assault, and
retaliation occurred in this case. The District is a recipient of federal funding.

14. Defendant, ROCHELLE COMMUNITY CONSOLIDATED SCHOOL
DISTRICT NO. 231 BOARD OF EDUCATION ("the Board"), is a government body with oversight
responsibility for the District, including all of its schools and employees.

15. Defendant, A.Z., is a minor and, upon information and belief, is a resident of
Rochelle, Illinois. At all times relevant, A.Z. was a student within the District.

16. Defendant, DR. JASON HARPER, at all relevant times was the
Superintendent for the District. He is sued in his individual capacity.

3

17. Defendant, ANTHONY DOYLE, at all relevant times was the Assistant
Superintendent and Title IX Coordinator for the District. He is sued in his individual capacity.

18. Defendant, JUSTIN ADOLPH, at all relevant times was the Principal of
Central Elementary School. He is sued in his individual capacity.

19. At all times relevant hereto, Defendants Harper, Doyle, and Adolph were
employees of the District and acted under the color of state law.

20. CHERYL ALDRICH, at all relevant times was employed as a bus
driver for the District and/or its transportation contractor and was responsible for student safety on
Bus 12.

21. At all times relevant hereto, Aldrich acted under the color of state law.

## FACTS COMMON TO ALL COUNTS

### I. The District's Knowledge of A.Z. and the Sexual Assault of E.R.

22. This case arises from a series of sexual assaults perpetrated against minor
Plaintiff E.R., a seven-year-old student, by Defendant A.Z., a then-13/14-year-old middle school
student, within the schools and programs operated by Defendant Rochelle School District 231 ("the
District").

23. Upon information and belief, the District and its officials were aware that A.Z.
posed a danger to younger students. In the prior school year, A.Z. had been suspended for making
sexual threats toward first-grade students on the bus. On or about March 15, 2025, A.Z. was
suspended for inappropriate sexual conduct.

24. In May 2024, while E.R. was a first-grade student at the District's Lincoln

Elementary, A.Z. sexually assaulted her on the school bus for the first time by putting his hands on her in a sexual manner over her clothes. On a second occasion, he put his hands down her pants and rubbed her private areas. A.Z. threatened E.R. not to disclose the assault.

25.   The abuse caused E.R. to experience stress-induced benign facial tics, for which her mother, Plaintiff Caitlin Holt ("Holt"), sought medical care.

26.   At the start of the next school year, in August/September 2025, the assaults resumed. While E.R. was a second-grade student at the District's Central Elementary, A.Z. again cornered her on the school bus.

27.   During one incident in September 2025, A.Z. took E.R. and physically choked her during a bus transfer at the middle school, and then threatened her that it would get worse if she told anyone.

28.   On September 7, 2025, a terrified E.R. disclosed the sexual assaults to a police officer, who reported them to E.R.'s mother.

## II. Holt's Advocacy and The District's Immediate Retaliation

29.   On September 7, 2025, Holt immediately took action to protect her daughter. She reported the assaults to the Ogle County Sheriff's Office.

30.   That same evening, Holt sent a formal written Title IX complaint to District officials, including Central Elementary Principal Justin Adolph, notifying them of the repeated sexual harassment and assault, demanding they protect E.R. from further harm, and requesting the initiation of a Title IX investigation.

31.   The following day, September 8, 2025, Holt secured an Emergency Stalking No Contact Order against A.Z. in the Circuit Court of Ogle County, prohibiting him from contacting E.R. and ordering him to stay at least 50 feet away from her residence and school.

32.   The District's response was not to protect E.R., but to retaliate against her and her mother for

reporting the abuse. On September 8, 2025—the day after Holt's Title IX complaint—officials at Central Elementary pulled eight-year-old E.R. from class and subjected her to an unauthorized and improper interrogation about the sexual assault.

33. This interrogation was conducted by untrained school staff, in direct violation of Illinois law and DCFS procedure, which requires that forensic interviews of child sexual abuse victims be conducted by trained specialists at a Children's Advocacy Center ("CAC"). E.R.'s formal forensic interview at the CAC, Shining Star, was not scheduled until the following day, September 9, 2025. The effect of this improper interview was to retraumatize E.R.

34. During this improper interrogation, District staff not only questioned E.R. about the sexual assault but also about her mother, asking leading and accusatory questions such as, "Does your mom ever abuse you or hurt you, hit you, yell at you?"

35. Immediately following this unauthorized interrogation, and based on the fabricated claims it elicited from the traumatized child, District officials made a report against Holt to the Illinois Department of Children and Family Services (DCFS) for suspected child abuse and neglect.

36. This was the second time the District had weaponized DCFS against Holt in retaliation for her advocacy. In the prior school year, Holt had raised concerns about a principal at Lincoln Elementary yelling at young students. Just four days later, DCFS appeared at her home based on a report from the school alleging "mental injury" related to E.R.'s stress-induced facial tics—the same tics that had escalated while E.R. was being secretly assaulted by A.Z. In that case, the DCFS worker expressed to Holt that there were no concerns.

37. The second retaliatory DCFS case, initiated on September 8, 2025, was likewise without merit as an investigator interviewed Holt's five children and found no issues.

6

### III. The District Creates and Fosters a Hostile Educational Environment

38.  The District's deliberate indifference to E.R.'s safety and its retaliation against her family fostered a hostile educational environment where E.R. and her brother were subjected to further harassment.

39.  In the days following Holt's Title IX complaint, peers on the school bus began to bully E.R. and her brother, blaming them for A.Z. being reported. One student told E.R. she was "going to hell" for reporting the sexual assault.

40.  On September 19, 2025, E.R.'s brother was involved in an altercation on the bus after another student repeatedly harassed him. The District's incident report inaccurately portrayed Caiden as the sole aggressor, stating only that he was "punching a younger student." The report omitted the fact that the other student had been calling E.R.'s brother names, waving an object in his face, and slapped E.R.'s brother. The upshot is that, due to Caitlin's reporting, the District began retaliating against her and her children.

41.  The District's failure to maintain a safe environment was exacerbated by its own systemic failures. Principal Ben Schwartz confirmed that the security cameras on Bus 12 were not functional on the day of Caiden's incident.

42.  The driver of Bus 12, Cheryl Aldrich, demonstrated a pattern of carelessness and failure to protect students. Community members posted on social media about other incidents on Bus 12 under her supervision, including another sexual assault case and her failure to notice a five-year-old had fallen asleep and been left on the bus.

43.  Despite Holt's repeated formal requests for protection and supportive measures, the District,

through Title IX Coordinator Anthony Doyle, continued to pressure Holt, accused her of interfering with their investigation, and threatened to make a determination without E.R.'s full statement unless Holt provided the confidential forensic interview report from Shining Star.

### IV. The Profound Harm Suffered by E.R.

44.    As a direct and proximate result of the sexual assaults and the District's subsequent retaliation and failure to protect her, E.R. has suffered severe and ongoing physical, psychological, and emotional trauma.

45.    Her physical symptoms include the return of severe facial tics and involuntary body movements, as well as new, panic-like symptoms including shortness of breath, a racing and pounding heart, and throbbing temples.

46.    Her emotional and psychological trauma has manifested as nightly bedwetting, extreme sadness, uncontrollable anger outbursts, and academic regression.

47.    On September 29, 2025, during an intake for counseling services with Lutheran Social Services of Illinois (LSSI), E.R. disclosed that she was suicidal.

48.    On September 30, 2025, E.R.'s doctors, concerned about her physical symptoms and suicidal ideation, began to question if she was suffering from Post-Traumatic Stress Disorder (PTSD). They prescribed Lexapro (for anxiety and depression), clonidine, and two emergency inhalers to manage her panic attacks.

### V. The District's Deliberate Indifference and Systemic Failures

49.    The District's failure to protect E.R. extends beyond the individual actions of its employees and reflects systemic deficiencies and deliberate indifference to student safety.

50.    Holt discovered that the District was not in compliance with Illinois's Erin's Law, which

mandates age-appropriate child sexual abuse prevention education for all students in Pre-K through 12th grade. Records obtained from Superintendent Jason Harper revealed that the District only provided this critical instruction to 6th, 7th, and 8th graders, leaving elementary students like E.R. without this state-mandated protection.

51.  The District's entire Title IX process was compromised by a conflict of interest, with Defendant Anthony Doyle serving simultaneously as the Assistant Superintendent and the Title IX Coordinator and investigator. Doyle admitted to Holt that he was "learning as he goes" with respect to Title IX.

52.  The District, through its Board and policymakers, maintained policies and customs that were deliberately indifferent to the rights of students. These policies and customs included failing to adequately train staff on mandated reporting versus improper investigation, failing to properly supervise and discipline employees who endangered children, failing to maintain functioning safety equipment like bus cameras, and fostering a culture of retaliation against parents and students who reported abuse.

## COUNT I - TITLE IX VIOLATION - SEXUAL HARASSMENT AND HOSTILE ENVIRONMENT
(Plaintiff v. Defendant Rochelle School District 231)

53.  Plaintiff restates, realleges, and incorporates by reference herein Paragraphs 1 through 52 as if fully restated.

54.  Title IX of the Education Amendments of 1972 provides that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance." 20 U.S.C. § 1681(a).

55.  To vindicate Title IX's purpose, the statute contains an implied private right of action for

9

victims of sex-based discrimination, which is enforceable in a suit for monetary damages. *See Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 76 (1992).

56.    For student-on-student harassment, a school district is liable in a private damages action under Title IX only where the district is deliberately indifferent to sexual harassment of which it has actual knowledge that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school.

57.    At all times relevant, Defendant Rochelle School District 231 was a recipient of federal funds and was therefore subject to the requirements of Title IX.

58.    Plaintiff E.R., as a female student enrolled in the District, is a member of a protected class under Title IX.

59.    During the 2024 and 2025 school years, E.R. was subjected to severe, pervasive, and objectively offensive sexual harassment by A.Z. on the school bus, a program and activity of the District.

60.    This harassment included, but was not limited to, nonconsensual sexual touching (placing his hands down her pants), physical choking, and explicit threats of escalating violence if she reported the abuse.

61.    The District had actual knowledge of this sexual harassment. Plaintiff Holt provided explicit, actual notice to multiple District officials, including Principal Justin Adolph and Title IX Coordinator Anthony Doyle, through a formal written complaint on September 7, 2025.

62.    The District also had prior actual knowledge of A.Z.'s sexual misconduct toward younger students, as he had previously been suspended for making sexual threats to first-grade students on the bus.

63.    Despite having actual knowledge of severe and ongoing sexual harassment, the District acted

10

with deliberate indifference. Its response was clearly unreasonable in light of the known circumstances.

64.   The District's deliberate indifference is demonstrated by its:

a. Failure to take immediate and effective steps to end the harassment and protect E.R. from further harm from A.Z.;

b. Failure to ensure a safe environment on its school bus, by failing to address the repeated, documented carelessness of the bus driver and by failing to maintain working security cameras; and

c. Decision to engage in unlawful retaliation against E.R. and Holt—including subjecting an eight-year-old victim to an improper interrogation and filing a baseless DCFS report—rather than taking corrective action to remedy the hostile environment.

65.   The sexual harassment perpetrated by A.Z., compounded by the District's deliberate indifference, was so severe, pervasive, and objectively offensive that it deprived E.R. of her right to access educational opportunities and benefits.

66.   As a direct result of the hostile environment, E.R. has suffered profound physical and psychological trauma, including severe anxiety, academic regression, panic attacks, and suicidal ideation, which has effectively barred her from equal access to her education.

67.   As a direct and proximate result of the District's violation of Title IX, Plaintiff E.R. has suffered and will continue to suffer damages of a personal and pecuniary nature.

WHEREFORE, Plaintiff CAITLIN HOLT, as parent and next friend of E.R., respectfully requests that this Honorable Court enter judgment in her favor and against Defendant ROCHELLE COMMUNITY CONSOLIDATED SCHOOL DISTRICT NO. 231, and grant the following relief:

a. Compensatory damages in an amount to be proven at trial;

b. Injunctive relief requiring the District to implement and enforce effective policies, procedures, and training to prevent and respond to sexual harassment and protect students from harm;

c. Reasonable attorneys' fees and costs; and

d. Such other and further relief as this Court deems just and proper.

## COUNT II - TITLE IX VIOLATION - RETALIATION
(Plaintiff v. Defendant Rochelle School District 231)

68. Plaintiff restates, realleges, and incorporates by reference herein Paragraphs 1 through 52 as if fully restated.

69. Title IX and its implementing regulations prohibit retaliation against any individual for the purpose of interfering with any right or privilege secured by the statute, including the right to report and complain about sex-based discrimination and harassment. Retaliatory acts are those that would dissuade a reasonable person from making or supporting a charge of discrimination.

70. Plaintiff Holt engaged in protected activity under Title IX when, on September 7, 2025, she filed a formal written complaint with the District detailing the sexual assault and harassment of her daughter, E.R., and demanding protection and an investigation. Holt's continued advocacy for her children's safety in subsequent communications also constitutes protected activity.

71. Immediately following Holt's protected activity, the District, through its agents and employees, took materially adverse actions against Holt and E.R. that were intended to, and did, punish and dissuade them from pursuing their rights under Title IX.

72. These adverse, retaliatory actions include, but are not limited to:

a. On September 8, 2025, the day after Holt's Title IX complaint, subjecting eight-year-old E.R. to a traumatic and unauthorized interrogation about the sexual assault, which included inappropriate and accusatory questions about her mother, such as "Does your mom ever abuse you or hurt you, hit you, yell at you?";

12

b. Immediately leveraging the improper interrogation to make a false and retaliatory report against Holt to the Illinois Department of Children and Family Services (DCFS), repeating a pattern of conduct where the District had previously weaponized a DCFS report against Holt shortly after she had raised other safety concerns; and

c. Failing to take adequate and effective steps to address the subsequent peer retaliation against E.R. and her brother, Caiden, who were harassed and bullied by other students for Holt's reporting of the sexual assault.

73. There is a direct causal connection between Holt's protected activity and the District's adverse actions. The retaliatory interrogation and DCFS report occurred within 24 hours of Holt filing her Title IX complaint, establishing a clear temporal link indicative of a retaliatory motive.

74. The District's retaliatory conduct was deliberate and designed to intimidate, punish, and silence Holt and her children, undermining their ability to advocate for and receive a safe education free from discrimination and harassment. The District's own Title IX Coordinator, Defendant Doyle, confirmed in writing to Holt that the retaliatory DCFS report was based on E.R.'s statements made during the school's improper questioning.

75. The District's retaliatory actions were objectively likely to dissuade a reasonable person from reporting sexual harassment and seeking protection under Title IX, and they directly violated the District's own stated policy prohibiting retaliation, which was provided to Holt in the District's September 15, 2025 Notice of Allegations.

76. As a direct and proximate result of the District's unlawful retaliation, E.R. was further traumatized, and both E.R. and Holt suffered additional emotional distress, humiliation, and a chilling of their federally protected rights.

WHEREFORE, Plaintiff CAITLIN HOLT, as parent and next friend of E.R., respectfully requests that this Honorable Court enter judgment in her favor and against Defendant ROCHELLE COMMUNITY CONSOLIDATED SCHOOL DISTRICT NO. 231, and grant the following relief:

      a. Compensatory damages in an amount to be proven at trial for the harm caused by the retaliation;

      b. Injunctive relief requiring the District to cease all retaliatory conduct and to implement and enforce effective policies against retaliation;

      c. Reasonable attorneys' fees and costs; and

      d. Such other and further relief as this Court deems just and proper.

## COUNT III - 42 U.S.C. § 1983 - *MONELL* LIABILITY FOR UNCONSTITUTIONAL POLICY OR CUSTOM
### (Plaintiff v. Defendant Rochelle School District 231)

77. Plaintiff restates, realleges, and incorporates by reference herein Paragraphs 1 through 52 as if fully restated.

78. In *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978), the Supreme Court held that a local government may be liable under § 1983 for an injury caused by a "policy or custom ... made by its lawmakers or ... those whose edicts or acts may fairly be said to represent official policy ...."

79. A municipality can be held liable under § 1983 if its policies or customs were the "moving force" behind the constitutional violation. *See Monell*, 436 U.S. at 694.

80. An official policy or custom may be established by the omissions of supervisory officials, such as the failure to train or supervise employees, where such failure amounts to deliberate indifference to the rights of persons with whom the employees come into contact.

81. "In situations that call for procedures, rules or regulations, the failure to make policy itself may

be actionable." *Jones v. City of Chicago*, 787 F.2d 200, 204 (7th Cir. 1986). A municipality's failure to promulgate necessary policies may be actionable if it rises to the level of deliberate indifference to a plaintiff's constitutional rights.

82. At all times relevant, Plaintiff E.R. possessed a constitutionally protected liberty interest in her bodily integrity and personal security, and a right to be free from state-created danger.

83. At all times relevant, Plaintiff E.R. possessed a constitutionally protected right to access a public education in an environment free from sexual assault and a hostile environment deliberately created and perpetuated by school officials.

84. As detailed herein, E.R. suffered a profound deprivation of her constitutional rights when she was sexually assaulted and subsequently subjected to a hostile environment and retaliatory acts by agents of the District.

85. The District is liable under § 1983 because these constitutional deprivations were caused by its official policies and customs, which were maintained with deliberate indifference to the safety and rights of its students. These policies and customs include, but are not limited to:

      a. **A Widespread Custom of Retaliation:** The District maintained a widespread, permanent, and well-settled custom of retaliating against parents and students who report safety concerns and misconduct by weaponizing the Illinois Department of Children and Family Services (DCFS). This is evidenced by the District filing retaliatory and unfounded DCFS reports against Holt on two separate occasions, each immediately following her protected activity of raising safety concerns, thereby creating a chilling effect on reporting and enabling abuse to continue.

      b. **Failure to Train and Supervise:** The District demonstrated deliberate indifference by failing to adequately train and supervise its employees on critical, recurring situations where the constitutional rights of students were certain to be violated. These failures include:

i. Failing to train staff on the fundamental legal distinction between their role as mandated reporters and the role of trained forensic interviewers, leading directly to the improper and traumatic interrogation of E.R. about her sexual assault by untrained school personnel.

ii. Failing to adequately train staff on, and failing to implement, the requirements of Illinois's Erin's Law (Public Act 097-1147), which left elementary students like E.R. without state-mandated, age-appropriate sexual abuse prevention education and more vulnerable to abuse.

iii. Failing to supervise bus drivers and other personnel to ensure student safety on school transportation, and failing to maintain basic safety equipment such as functioning security cameras, which directly contributed to the environment where E.R. was assaulted.

iv. Failing to properly train or appoint a competent and unbiased Title IX Coordinator, as evidenced by Defendant Doyle admitting he was "learning as he goes" while simultaneously serving as Assistant Superintendent and investigator, creating a clear conflict of interest and an inadequate response to sexual harassment.

86. The District, through its final policymakers including the Board and Superintendent Harper, acted with deliberate indifference to the obvious need for more or different training and policies. It knew or should have known that its failure to act was substantially certain to result in the violation of students' constitutional rights.

87. These policies and customs, practiced with the knowledge and tacit authorization of the District's policymakers, were the direct and moving force behind the repeated violation of E.R.'s constitutional right to bodily integrity, personal security, and access to an education.

88. As a direct and proximate result of the District's unconstitutional policies and customs, E.R.

has suffered and will continue to suffer severe physical and psychological damages, emotional distress, and reputational harm.

WHEREFORE, Plaintiff CAITLIN HOLT, as parent and next friend of E.R., respectfully requests that this Honorable Court enter judgment in her favor and against Defendant ROCHELLE COMMUNITY CONSOLIDATED SCHOOL DISTRICT NO. 231, and grant the following relief:

      a.      Compensatory damages in an amount to be proven at trial;

      b.      Injunctive relief requiring the District to adopt and enforce constitutional policies, procedures, and training regarding the handling of sexual abuse reports, retaliation, Erin's Law compliance, and employee supervision;

      c.      Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

      d.      Such other and further relief as this Court deems just and proper.

## COUNT IV - 42 U.S.C. § 1983 - FAILURE TO INTERVENE
(Plaintiff v. Individual Defendants)

89.   Plaintiff restates, realleges, and incorporates by reference herein Paragraphs 1 through 52 as if fully restated.

90.   The Seventh Circuit has consistently recognized that a state actor's failure to intervene in the violation of another's constitutional rights may render him liable under 42 U.S.C. § 1983. *Patrick v. City of Chicago*, 213 F.Supp.3d 1033, 1053 (N.D. Ill. 2016); *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). An individual can be held liable if they (1) had reason to know that a constitutional violation was being committed by a state actor, and (2) had a realistic opportunity to intervene to prevent the harm from occurring but failed to do so.

91.   At all times relevant, Plaintiff E.R. possessed a constitutionally protected right to bodily

17

integrity and personal security under the substantive due process protections of the Due Process Clause of the Fourteenth Amendment. *See Ingraham v. Wright*, 430 U.S. 651, 672 (1977) (students have a fundamental right to be free from unjustified intrusions on personal security).

92. Defendants DR. JASON HARPER, ANTHONY DOYLE, and JUSTIN ADOLPH, acting under the color of state law, each had reason to know that E.R.'s constitutional rights were being violated and had a realistic opportunity to intervene but failed to do so.

93. These Individual Defendants, through their acts and omissions, failed to take reasonable steps to protect E.R. and failed to intervene to stop the deprivation of her constitutional rights by virtue of prior knowledge of the sexual misconduct by the perpetrator, A.Z., and also, including but not limited to:

a. **CHERYL ALDRICH (Bus Driver)** knew or should have known of the ongoing sexual harassment, assault, and subsequent peer retaliation occurring on the bus she was responsible for supervising. She had a realistic opportunity to intervene to stop A.Z.'s assaultive conduct and the retaliatory bullying but was deliberately indifferent and failed to act, thereby allowing the hostile and dangerous environment to persist.

b. **Defendant JUSTIN ADOLPH (Principal)** had actual knowledge of the sexual assaults via Holt's September 7, 2025, complaint. He had a realistic opportunity to intervene to prevent further constitutional violations by implementing an effective safety plan and by stopping his own staff from conducting the retaliatory and unlawful interrogation of E.R. on September 8, 2025, but he failed to do so.

c. **Defendant ANTHONY DOYLE (Title IX Coordinator)** had actual knowledge of the sexual assaults and Holt's subsequent complaints of retaliation. He had a realistic opportunity and the direct authority to intervene to prevent the retaliatory interrogation of E.R., to ensure effective

protective measures were implemented to stop the ongoing hostile environment, and to stop the peer retaliation against E.R. and her brother. Instead, he failed to intervene and dismissed Holt's concerns, allowing the constitutional deprivations to continue.

        d.    **Defendant DR. JASON HARPER (Superintendent),** as the final policymaker with ultimate supervisory authority, was on notice of the severe constitutional violations. He had a realistic opportunity to intervene by directing his subordinates to take immediate and effective action to protect E.R., to cease all retaliation, and to comply with the law. He failed to exercise his authority and was deliberately indifferent to his subordinates' failure to protect E.R.'s rights.

94.   As a direct and proximate cause of the Individual Defendants' failure to intervene, E.R. was subjected to continued sexual assault, harassment, and retaliation, causing her to suffer profound and ongoing damages, including severe physical and psychic injuries.

      WHEREFORE, for the foregoing reasons, Plaintiff CAITLIN HOLT, as parent and next friend of E.R., respectfully requests that this Honorable Court enter judgment in her favor and against Defendants DR. JASON HARPER, ANTHONY DOYLE, and JUSTIN ADOLPH, in their individual capacities, and grant the following relief:

        a.    Compensatory damages in an amount to be determined at trial;

        b.    Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

        c.    Such other and further relief as this Court deems just and proper.

## COUNT V – NELIGENCE INVOLVING WILLFUL AND WANTON CONDUCT
(Plaintiff v. All Defendants)

95.   Plaintiff restates, realleges, and incorporates by reference herein Paragraphs 1 through 52 as if fully restated.

96.   Under Illinois law, "willful and wanton conduct" means a course of action

which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property. *See* 745 ILCS 10/1-210.

97.    At all times relevant, Defendant Rochelle School District 231 and its employees, including Individual Defendants HARPER, DOYLE, and ADOLPH, owed a non-delegable duty to E.R. to provide a safe educational environment and to protect her from foreseeable harm, including sexual assault, harassment, and retaliation.

98.    Defendants breached this duty and engaged in willful and wanton conduct by acting with utter indifference to and conscious disregard for E.R.'s safety and well-being. This conduct was not merely negligent but represented a deliberate or reckless course of action that created a high probability of severe harm to E.R.

99.    Defendants' willful and wanton conduct includes, but is not limited to, the following acts and omissions:

    a.    **Conscious Disregard of a Known Danger:** The District and its officials, including Defendants Doyle and Adolph, had actual knowledge of A.Z.'s history of sexual threats and prior suspensions for sexual misconduct, but consciously disregarded this known danger and failed to take reasonable measures to protect E.R. and other vulnerable elementary students from him, thereby demonstrating an utter indifference to the high probability that he would assault another child.

    b.    **Deliberate Failure to Supervise and Maintain Safety:** The District and Defendant Aldrich acted with utter indifference to student safety on Bus 12 by failing to adequately supervise students and by failing to ensure that basic safety equipment, such as security cameras, were functional. This failure persisted despite knowledge of a pattern of misconduct on the bus, including other sexual assault cases.

20

c. **Intentional and Retaliatory Acts:** Defendants Adolph and Doyle, acting as agents of the District, engaged in an intentional course of action designed to punish and intimidate Holt and E.R. for reporting sexual assault. This conduct included subjecting a seven-year-old victim to a traumatic, improper interrogation and weaponizing DCFS by filing a false, retaliatory report against her mother—acts which showed a deliberate intention to cause harm or, at minimum, a conscious disregard for the severe emotional distress and trauma these actions would inflict upon a child victim.

d. **Reckless Disregard Through Systemic Failures:** The District, through its policymakers including Defendant Harper and the Board, acted with utter indifference to student safety by failing to implement or enforce critical policies, including:

i. Failing to ensure compliance with Illinois's Erin's Law for elementary school students, thereby depriving E.R. of state-mandated abuse prevention education; and

ii. Failing to adequately train and supervise employees on the legally mandated procedures for handling child sexual abuse disclosures, which directly led to the unlawful interrogation of E.R.

100. As a direct and proximate cause of the Defendants' willful and wanton conduct, E.R. was subjected to repeated sexual assaults and a hostile, retaliatory educational environment, and has suffered and will continue to suffer severe and permanent damages.

101. These damages include profound physical and psychological injuries, including symptoms consistent with PTSD, suicidal ideation, panic attacks causing shortness of breath and heart-pounding, severe emotional distress, academic regression, and the return of stress-induced physical tics.

21

WHEREFORE, for the foregoing reasons, Plaintiff CAITLIN HOLT, as parent and next friend of E.R., respectfully requests that this Honorable Court enter judgment in her favor and against Defendant ROCHELLE COMMUNITY CONSOLIDATED SCHOOL DISTRICT NO. 231 and Individual Defendants DR. JASON HARPER, ANTHONY DOYLE, JUSTIN ADOLPH, and CHERYL ALDRICH, and grant the following relief:

    a.    Compensatory damages in an amount to be determined at trial; and,

    b.    Such other and further relief as this Court deems just and proper.

## COUNT VI – ILLINOIS CIVIL RIGHTS ACT OF 2003 VIOLATION
(Plaintiff v. Defendant Rochelle School District 231)

102.    Plaintiff restates, realleges, and incorporates by reference herein Paragraphs 1 through 52 as if fully restated.

103.    The Illinois Civil Rights Act of 2003 prohibits color discrimination by local governments. *See* 745 ILCS 23/5.

104.    Specifically, the Act provides that "[n]o unit of State, county, or local government in Illinois shall: (1) exclude a person from participation in, deny a person the benefits of, of subject a person to discrimination under any program or activity on the grounds of that person's race, color, national origin, or gender. . ." *Id.*

105.    The Act provides that "[a]ny party aggrieved by conduct that violates subsection (a) may bring a civil lawsuit, in a federal district court or State circuit court, against the offending unit of government" and that such lawsuit must be brought within two years.

106.    At all times relevant, Defendant Board is a unit of local government.

107.    Plaintiff, E.R., was at all times relevant excluded from participation in an educational program and activity while she was enrolled at Defendant as a result of her gender (female).

108.    Plaintiff, E.R., was excluded as a result of horrendous acts of sexual abuse on her

person by a fellow student, A.Z., because of her gender (female).

109.    Plaintiff, E.R., has suffered intense emotional and psychic injuries as a result of the exclusion and abuse.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendant, and award compensatory damages, reasonable attorneys' fees, expert witness fees and other litigation expenses, costs, and such other relief as this Court deems just and proper.

## JURY DEMANDED

Plaintiff, CAITLIN HOLT, as parent and next friend of E.R., a minor, hereby demands a trial by jury on all counts and issues so triable in this action.

Respectfully submitted,

**CAITLIN HOLT, as general guardian of E.R., a minor**

By:    */s/ Cass T. Casper*

_____

Plaintiff's Attorney

*Cass T. Casper, Esq.*
DISPARTI LAW GROUP, P.A.
121 W. Wacker Drive, Suite 2300
Chicago, Illinois 60601
P: (312) 506-5511 ext. 331
E: cass.casper@dispartilaw.com